1
2
3
4
5                    **IN THE UNITED STATES DISTRICT COURT**
6                **FOR THE EASTERN DISTRICT OF CALIFORNIA**
7
8
9  DEPARTMENT OF TOXIC                )    Case No. 1:98-cv-06264 OWW TAG
   SUBSTANCES CONTROL,                )
                                      )    REPORT AND RECOMMENDATIONS
10              Plaintiff,            )    REGARDING PLAINTIFF'S
                                      )    APPLICATION FOR DEFAULT
11        v.                          )    JUDGMENT AGAINST DEFENDANT
                                      )    CLIFFORD N. PITTS
12  WITCO CORPORATION, et al.,        )
                                      )    (Doc. 196)
13              Defendants.           )
                                      )
14  _____   )
15
16        Proceeding under the Comprehensive Environmental Response, Compensation, and

17  Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq., the Resources and Conservation Recovery

18  Act ("RCRA"), 42 U.S.C. § 6962 et seq., and the California Health & Safety Code § 58009,

19  Plaintiff California Department of Toxic Substances Control seeks to recover the costs of abating

20  and remedying environmental damages allegedly caused by, among others, Defendant Clifford N.

21  Pitts. (Doc. 1). Defendant Pitts, it is alleged, owned and operated San Joaquin Drum Company,

22  a drum cleaning and reconditioning business located at 3930 Gilmore Street, Bakersfield,

23  California. (Id.). Pending now before the Court is Plaintiff's Fed. R. Civ. P. 55(b)(2) application

24  for entry of default judgment against Defendant Pitts. The matter has been referred to the

25  Magistrate Judge pursuant to 28 U.S.C. § 636(b).

26
27
28                                      1

I. **Procedural History and Claims Presented**

Plaintiff California Department of Toxic Substances Control ("DTSC") filed its original

Complaint against various defendants, including Defendant Pitts, on October 30, 1998.  (Doc. 1).

A First Amended Complaint that added Chevron Corporation as an additional defendant was

filed on July 29, 1999, and again on August 5, 1999.  (Docs. 24, 26).  A Second Amended

Complaint was filed on June 25, 2003.  (Doc. 95).  As alleged in the Second Amended

Complaint, the San Joaquin Drum Company at 3930 Gilmore Street in Bakersfield, California,

was used for industrial drum cleaning and reconditioning from approximately 1967 through

1986.  (Doc. 95, ¶ 18).  Allegedly owned and operated by Defendant Pitts (Doc. 95, ¶ ¶ 17, 19),

the site received drums for cleaning and reconditioning from other named defendants (or their

predecessors and divisions).  These defendants included Witco, Western Farm Service,

Dow Chemical Company and Chevron Corporation.  (Doc. 95, ¶ ¶ 13-16, 20-24).  On November

19, 1980, the DTSC inspected the site and found approximately 800 to 1,000 containers stored

on-site and two abandoned underground sumps filled with liquid.  (Doc. 95, ¶ 25).  Although

clean-up activities have occurred at the site from 1981 through at least the filing of the First

Amended Complaint in 1999, the site allegedly remains contaminated and the soil has elevated

levels of chlordane, toxaphene, chromium, lead, zinc, acetone, toluene, total xylene,

trichloroethylene, tetracholoroethene, naphthalene, dibenzofuran, fluorene, pyrene, chrysene,

benzo(b)fluoranthene, benzo(a)pyrene and total petroleum hydrocarbons.  (Doc. 95, ¶ 26).

Moreover, the underlying groundwater allegedly has significant levels of tetrachloroethene,

dicloroethane, dichloroethylene, tricholoroethane, tricholoroethylene, dicholorobenzene, DDE,

DDT, acetone, toluene, total xylene, arsenic and cadmium.  (Id.)

On November 28, 1999, a process server went to Defendant Pitts's home in Bennington,

Oklahoma, and left the original Complaint and summons with Norma Pitts, a person he deemed

to be of suitable age and discretion to accept such service.  (Doc. 7 and Doc. 197, Declaration of

Janill L. Richards, Exh. C).  Pitts did not respond to the Complaint and, upon application by

1  Plaintiff DTSC, default was entered against him by the clerk of the court on March 25, 1999.

2  (Docs. 17-19).  Thereafter, a First Amended Complaint was served upon Defendant Pitts by mail,

3  but with no response.  (Doc.197, Declaration of Janill L. Richards, ¶ 8).  Finally, the Second

4  Amended Complaint was personally served on Defendant Pitts at his Boswell, Oklahoma

5  residence on November 1, 2003.  (Doc. 139, Doc. 197, Declaration of Janill L. Richards,

6  Exh. D).  Defendant Pitts did not respond to the Second Amended Complaint and on February

7  25, 2004, Plaintiff DTSC requested entry of default against him.  (Docs. 137-138).  Default as to

8  the Second Amended Complaint subsequently was entered by the clerk against Defendant Pitts

9  on February 26, 2004.  (Doc. 141).

10  **II.   Analysis**

11       A defendant is in default upon failing to respond to or answer a complaint within the time

12  period permitted by the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 55(a).   The rules

13  generally allow a defendant twenty days after service of the summons and complaint to file an

14  answer or file a Rule 12 motion.  See  Fed. R. Civ. P. 12(a)(1).   Should a defendant fail to

15  respond within the permissible time-frame, a default judgment may be entered.  See Benny v.

16  Pipes, 799 F.2d 489, 492 (9th Cir. 1986), amended on other grounds, 807 F.2d 1514 (9th Cir.),

17  cert. denied, 484 U.S. 870 (1987).  The issuance of a default judgment is governed by Fed. R.

18  Civ. P. 55, which states in relevant part:

19       (a)  Entry. When a party against whom a judgment for affirmative relief is sought
     has failed to plead or otherwise defend as provided by these rules and that fact is
20       made to appear by affidavit or otherwise, the clerk shall enter the party's default.

21       (b)  Judgment. Judgment by default may be entered as follows:

22            (1)  By the Clerk.  When the plaintiff's claim against a defendant is for a
            sum certain or for a sum which can by computation be made certain, the
23            clerk upon request of the plaintiff and upon affidavit of the amount due
            shall enter judgment for that amount and costs against the defendant, if the
24            defendant has been defaulted for failure to appear and is not an infant or
            incompetent person.
25
            (2)  By the Court.  In all other cases the party entitled to a judgment by
26            default shall apply to the court therefor; but no judgment by default shall
            be entered against an infant or incompetent person unless represented in
27

28                                           3

the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.  If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

(c)  Setting Aside Default.  For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

A court has the discretion to enter a default judgment against one who is not an infant, incompetent, or member of the armed services where the claim is for an amount that is not certain on the face of the claim and where:

**(1)** the defendant has been served with the claim;

**(2)** the defendant's default has been entered for failure to appear;

**(3)** if the defendant has appeared in the action, the defendant has been served with written notice of the application for judgment at least three days before the hearing on the application; and

**(4)** the court has undertaken any necessary and proper investigation or hearing in order to enter judgment or carry it into effect.

 Fed. R. Civ. P. 55(b)(2); Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988), cert. denied, 493 U.S. 858 (1989);  Twentieth Century Fox Film Corp. v. Streeter, 438 F.Supp. 2d 1065, 1070 (D. Ariz. 2006).  Factors that may be considered by courts in exercising discretion as to the entry or setting aside of a default judgment include the nature and extent of the delay, Draper v. Coombs, 792 F.2d 915, 924-925 (9th Cir. 1986); the possibility of prejudice to the plaintiff, Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir.1986); the merits of the plaintiff's substantive claim, id.; the sufficiency of the allegations in the complaint to support judgment, Alan Neuman Productions, Inc., 862 F.2d at 1392; the amount in controversy,

4

1   Eitel v. McCool, 782 F.2d at 1471-1472; the possibility of a dispute concerning material facts,

2   id.; whether the default was due to excusable neglect, id.; and the strong policy underlying the

3   Federal Rules of Civil Procedure that favors decisions on the merits, id..

4          A default judgment generally bars the defaulting party from disputing the facts alleged in

5   the complaint, but the defaulting party may argue that the facts as alleged do not state a claim.

6   Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392.   Thus, well pleaded factual

7   allegations, except as to damages, are taken as true; however, necessary facts not contained in the

8   pleadings, and claims which are legally insufficient, are not established by default. Cripps v. Life

9   Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992); TeleVideo Systems, Inc. v.

10  Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).

11         **1.  Defendant's Status and Service of Complaint**

12         In the instant case, there is no indication in the record that Defendant Pitts is an

13  unrepresented incompetent person or that he is otherwise protected from entry of default

14  judgment by the Servicemembers Civil Relief Act, 50 U.S.C. A. § 501 et seq.

15         According to a proof of service filed with the Court, the original Complaint was

16  personally served on Defendant Pitts at his home address by having been left at that address with

17  Norma Pitts, a person deemed by the process server to be of suitable age and discretion.  (Doc. 7,

18  Doc. 197, Exh. C).  Although no proof of service was filed, it is alleged that the First Amended

19  Complaint, which simply added Chevron as a defendant was mailed to Pitts.  (Doc. 197, ¶ 8).

20  Finally, the operative Second Amended Complaint was, according to a proof of service filed with

21  the Court, personally served on Defendant Pitts himself at his home address.  (Doc. 139, Doc.

22  197, Exh. D).  As there are no contravening facts in the record, it is evident that the Complaint

23  and Second Amended Complaint were served upon Defendant Pitts in conformance with Fed. R.

24  Civ. P. 4(e)(2) ("service upon an individual . . . may be effected in any judicial district of the

25  United States  . . .  pursuant to the law of the state in which  . . .  service is effected . . . or by

26  delivering a copy of the summons and of the complaint to the individual personally or by leaving

27

28                                         5

copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein").

As noted above, the original Complaint and the Second Amended Complaint were personally served, a method explicitly authorized by Fed. R. Civ. P. 4(e)(2).  However, also as noted above, the First Amended Complaint was mailed (Doc. 197, Decl. of Janill L. Richards, ¶ 8), a process that could only be effective if done in conformance with the law of Oklahoma, the state in which service was effected.  Fed. R. Civ. P. 4(e)(1).  In Oklahoma, "[s]ervice by mail shall be accomplished by mailing a copy of the summons and petition by certified mail, return receipt requested and delivery restricted to the addressee." 12 Okla. Stat. Ann. § 2004(C)(2)(b). Because there is no indication in the record of the use of certified mail, this Court cannot find that service of the First Amended Complaint complied with Oklahoma law.  Notwithstanding, given that Defendant Pitts was properly served with the Complaint yet nevertheless failed to appear, and further given that the First Amended Complaint simply added Chevron as a defendant without adding any new or additional claims for relief against Pitts himself, improper service of the First Amended Complaint (if such occurred) was of no moment.  See Fed. R. Civ. P. 5(a) ("No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against *them* shall be served upon them in the manner provided for service of summons in Rule 4") (italics added); 4B Wright & Miller, Federal Practice and Procedure: Civil 3d § 1144 (2002).  Accordingly, the service predicate to entry of a default judgment has been met.

### 2. Clerk's Entry of Default for Failure to Appear

Twice, both after Defendant Pitts failed to respond to the original Complaint again after he failed to respond to the operative Second Amended Complaint, Plaintiff DTSC applied to the clerk of the court for entry of default judgment.  (Docs. 17, 137).  On both such occasions, default was entered against Pitts.  (Docs. 19, 141).  Twentieth Century Fox Film Corp. v.

///

1    Streeter, 438 F.Supp. 2d at 1070 ("After entry of a default, a court may grant a default judgment

2    on the merits of the case").

3        **3.  Notice of Application for Default Judgment**

4        A defaulting party is entitled to written notice of the application for default judgment

5    unless the party has not appeared in the action.  Fed. R. Civ. P. 55(b)(2).   Written notice of an

6    application for default judgment must be served at least three days prior to the hearing on the

7    defaulting party.   An appearance for the purpose of Rule 55 need not be a formal one and may

8    consist even of informal contacts made by the defaulting party where the defaulting party

9    demonstrates a clear purpose to defend the suit.  See In re Roxford Foods, Inc., 12 F.3d 875, 879-

10   881 (9th Cir. 1993) (holding in declaratory relief action that communications by a trustee in

11   bankruptcy regarding identical claim in related bankruptcy action sufficient to demonstrate clear

12   intention to defend where time had been given to trustee to retain counsel for representation on

13   the merits).  Thus, the party seeking a default judgment must demonstrate either that the required

14   notice has been given, or that the defaulting party or parties have not appeared in the action and

15   that notice is therefore not required.

16       In this case, Defendant Pitts has not appeared in the action, notwithstanding having been

17   served with the Complaint and with amendments thereto.  Accordingly, pursuant to Fed. R. Civ.

18   P. 55(b)(2), notice of application for entry of default was not required.  Twentieth Century Fox

19   Film Corp. v. Streeter, 438 F.Supp. 2d at 1070-1071; .Discovery Communications, Inc. v.

20   Animal Planet, Inc., 172 F. Supp. 2d 1282, 1287 (C.D. Cal. 2001).  Finally, although it was not

21   required, the Court notes DTSC's statement in its application for entry of default judgment that a

22   copy of the application, with all appended declarations, was mailed to Defendant Pitts at his last

23   known address.  (Doc. 196, p. 2).  In sum, the notice predicate to entry of default judgment is

24   inapplicable and, should the remaining predicates be satisfied, such a judgment may be entered

25   against Defendant Pitts.

26   *///*

27

28                                                 7

1    **4. Liability**

2    _____Because claims that are legally insufficient are not established by a party's default, a court

3    in considering an application for default judgment must determine whether the claims upon

4    which a plaintiff seeks a default judgment are legally sufficient.  An application for a default

5    judgment qualifies as a motion pursuant to Fed. R. Civ. P. 7(b)(1) and it should include the legal

6    memorandum and affidavits required by Local Rule 78-230(b).  It is the plaintiff's burden to

7    demonstrate to the court that under the pertinent law, the plaintiff's claims, as alleged, are legally

8    sufficient.  Likewise, the applicant should supply the court with all pertinent and necessary legal

9    authority pursuant to which it is appropriate to enter judgment against a particular party based

10   upon the allegations of the party's status, agency, participation, or other alleged basis for liability

11   of the particular party.

12            **a. Complaint's Allegations and DTSC's Evidence**

13            The court has reviewed and considered the allegations in the complaint, along with the

14   declarations of Janill L. Richards, James Tjosvold, P.E., Jeffrey Mahan, and DTSC's Custodian

15   of Records, all filed in support of entry of default judgment against Defendant Pitts.  (Docs. 197-

16   200).  Based on these declarations and attached exhibits, the court finds evidence that Plaintiff

17   DTSC conducted  investigative and cleanup activities at the San Joaquin Drum Company site at

18   3930 Gilmore Street in Bakersfield, California.  (E.g., Doc. 198, Declaration of James Tjosvold,

19   P.E., ¶ 4).  Furthermore, the Court finds that these activities have caused DTSC to incur over

20   $1,000,000 in response costs, that these costs continue to be incurred, and that to date only

21   $300,000 is expected to be recovered through a settlement by DTSC with another defendant

22   (Western Farm Services, Inc.).  (Id. at ¶ 5).

23            The Court further finds that Kern County tax assessment records establish that San

24   Joaquin Drum Company is the current owner of 3930 Gilmore Street in Bakersfield, California,

25   although records from the California Secretary of State establish that no such incorporated entity,

26   whether foreign or domestic, ever registered with the California Secretary of State under that

27

28                                           8

name.  (Doc. 197, Decl. of Janill L. Richards, ¶¶ 6-7 and Exhs. A, B).  These records therefore

indicate that "San Joaquin Drum Company" was simply an unincorporated entity under which

the drum cleaning and refurbishing business located at 3930 Gilmore Street in Bakersfield,

California was operated.  Furthermore, Plaintiff DTSC has provided the results of a Westlaw

search of Oklahoma tax assessor records, and these show Defendant Clifford Pitts's former

address to be in Bakersfield, California and his current address to be in Boswell Oklahoma, the

same town in which San Joaquin Drum Company is located according to Kern County tax

assessment records.  (Doc. 197, Decl. of Janill L. Richards, ¶ 9, Exhs. B, E).  Finally, "'the

general rule of law is that upon default the factual allegations of the complaint, except those

relating to the amount of damages, will be taken as true.'" TeleVideo Systems, Inc. v.

Heidenthal, 826 F.2d at 917-918 (quoting Geddes v. United Financial Group, 559 F.2d 557, 560

(9th Cir. 1977)).  Here, those well-pleaded allegations clearly and specifically state that

Defendants Pitts owned and operated San Joaquin Drum Company at 3930 Gilmore Street in

Bakersfield, California, that his company was in the business of cleaning and reconditioning

drums from approximately 1967 through 1986 and that, during the company's operations,

hazardous waste, sludge and wastewater generated from the drum cleaning and reconditioning

process.  (Doc. 95, ¶¶ 17-19).

### b.  Complaint's Causes of Action

In its Application for Court Entry of Default Judgment (Doc. 196), Plaintiff DTSC seeks

a money judgment against Defendant Pitts in the amount of $100,000.  (Doc. 196, p. 2).  DTSC's

application for default judgment does not, however, specify the counts within its second amended

complaint upon which such judgment should be entered.  Notwithstanding, given that Counts

Two and Three of DTSC's Second Amended Complaint seek nothing more than injunctive relief

under the Resources and Conservation Recovery Act, 42 U.S.C. § 6972 and under California

Health & Safety Code § 58009, respectively, only Count One of the Second Amended Complaint

is relevant.  In Count One, DTSC demands payment under section 107(a) of the Comprehensive

1  Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et

2  seq., for its costs incurred in responding to the release and threatened release of hazardous

3  substances from the San Joaquin Drum site.  (Doc. 95, ¶¶ 27-37).

4                                          *I. CERCLA*

5             To establish liability under CERCLA, a plaintiff must prove: (1) the site at issue is a

6  disposal or treatment facility, (2) there has been a release, or a threatened release of hazardous

7  substances from the facility, (3) the plaintiff has incurred costs in response to the release or

8  threatened release, and (4) the defendant falls within one of the four classes of responsible

9  persons.  United States v. Chapman, 146 F.3d 1166, 1169 (9th Cir. 1998); 3350 Stevens Creek

10  Assoc. v. Barclays Bank of California, 915 F.2d 1355, 1358 (9th Cir. 1990), cert. denied, 500

11  U.S. 917 (1991);  California Dep't of Toxic Substances Control v. Interstate Non-Ferrous Corp.,

12  298 F. Supp. 2d 930, 940 (E.D. Cal. 2003).  As to the fourth requirement above, four classes of

13  persons are strictly liable for releases of hazardous substances: (1) current owners and operators

14  of a facility where hazardous substances were disposed, (2) past owners or operators who owned

15  or operated the facility at the time of the disposal, (3) transporters of the hazardous substances,

16  and (4) persons who arrange for disposal or treatment at any facility containing hazardous

17  substances.  California Dep't of Toxic Substances Control v. Interstate Non-Ferrous Corp.,

18  298 F. Supp. 2d at 940; Courtaulds Aerospace, Inc. v. William C. Huffman, 826 F. Supp. 345,

19  349 (E.D. Cal. 1993).

20             Here, the Complaint, Amended Complaint and Second Amended Complaint all alleged

21  that Defendant Pitts owned a facility where hazardous wastes were released, specifically, the San

22  Joaquin Drum Company at 3930 Gilmore Street in Bakersfield, California.  (Doc. 1, ¶¶ 16-24,

23  Doc. 26, ¶¶ 17-26, Doc. 95, ¶¶ 17-26).  Moreover, given the evidence submitted by DTSC in its

24  application for default as noted above, and taking the allegations of DTSC's well-pleaded Second

25  Amended Complaint as true, also as noted above, the Court concludes that Defendant Pitts is the

26  current owner of a hazardous waste facility *and* was the owner and operator of that facility when

27

28                                                10

hazardous substances were disposed thereon.  Each of the remaining elements required for CERCLA-liability also have been established: (1) the site at issue is a disposal or treatment facility (Doc. 198, Decl. of James Tjosvold, P.E., ¶ 4), (2) there has been a release, or a threatened release of hazardous substances from the facility (Doc. 95, ¶¶ 19-26, Doc. 198, Decl. of James Tjosvold, P.E., ¶¶ 4-5) and (3) Plaintiff DTSC has incurred costs in response to the release or threatened release.  (Doc. 95, ¶ 32, Doc. 198, Decl. of James Tjosvold, P.E., ¶ 5, Doc. 200, Decl. of DTSC's Custodian of Records, ¶¶ 2-5 and Exh. A).  Thus, based on the evidence before the Court, Defendant Pitts is subject to CERCLA liability.

**III.   Amount of Judgment**

Generally, the scope of proceedings on an application for default judgment involves a determination of damages, which the plaintiff must prove by evidence, whether by affidavits, see Davis v. Fendler, 650 F.2d 1154, 1161-1162 (9th Cir. 1981), or other evidence, see Fed. R. Civ. P. 55(b)(2).  Fed. R. Civ. P. 55(b)(2) provides in pertinent part:

> If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearing or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

A party seeking a default judgment must provide the court with evidence sufficient to prove the amount of any damages sought.  A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Fed. R. Civ. P. 54(c).

**1.  Joint and Several Liability**

Liability under CERCLA is joint and several. California v. Montrose Chem. Corp., 104 F.3d 1507, 1518 n.9 (9th Cir. 1997).  Notwithstanding, DTSC requests judgment only in the amount of $100,000.  (Doc. 196, p. 2).  While this is substantially less that DTSC's actual response costs to date, DTSC submits that such sum nevertheless will permit it enforce a lien against the property at 3930 Gilmore Street, the site of the operations of San Joaquin Drum

///

1  Company.  (Doc. 196, p. 2, Doc. 197, p. 2).  Given that liability is established, the Court finds

2  that judgment in the requested amount of $100,000 is reasonable and just.

3  **RECOMMENDATIONS**

4  In light of the foregoing IT IS RECOMMENDED that

5  1.      DTSC's application for default judgement in the amount of One Hundred

6  Thousand Dollars ($100,000) be GRANTED;

7  2.      DTSC's previously filed Proposed Default Judgment Against Clifford N. Pitts

8  dba San Joaquin Drum Company (Doc. 201) be ADOPTED; and

9  3.      DTSC be DIRECTED to serve a copy of this order on Defendant Pitts at his last

10  known address and to file proof of service of same.

11  This Report and Recommendations is submitted to the United States District Court Judge

12  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of

13  the Local Rules of Practice for the United States District Court, Eastern District of California.

14  Within thirty (30) days after being served with a copy, any party may file written objections with

15  the court and serve a copy on all parties. Such a document should be captioned "Objections to

16  Magistrate Judge's Report and Recommendations." Replies to the objections shall be served and

17  filed within ten (10) court days (plus three days if served by mail) after service of the objections.

18  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

19  The parties are advised that failure to file objections within the specified time may waive the

20  right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21

22  IT IS SO ORDERED.

23  Dated:   **October 3, 2006**                                    **/s/ Theresa A. Goldner**

      **j6eb3d**                                                        UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28                                                    12